ALPHONSO B. HAWKINS, Assignee, v. AMOS P. IRELAND and Others.[1]

May 8, 1896.

Nos. 9961—(220).

**Assignment for Creditors—When Voluntary.**

An assignment for the benefit of creditors, under the insolvency laws of this state, by a debtor, after garnishee proceedings have been commenced against him, is not an involuntary, but a voluntary, assignment.

**Same—Restraining Action in Foreign State.**

A court of equity of this state has the power and will restrain one of its own citizens, of whom it has jurisdiction, from prosecuting an action in a foreign state or jurisdiction, whenever the facts of the case make it necessary so to do to enable the court to do justice, and prevent one citizen from obtaining an inequitable advantage of another.

**Same—Directing Conveyance of Land in Foreign State.**

The defendant Ireland made to his wife, the defendant Eliza S., a deed of land in North Dakota which was fraudulent as to his creditors, and afterwards made an assignment for the benefit of his creditors, under the insolvency laws of this state, to the plaintiff. The defendant bank, a creditor, became a party to the insolvency proceedings, proved its entire debt against the insolvent in such proceedings, and still asserts all the rights of a creditor therein. It requested the plaintiff to commence an action, as such assignee, in the courts of North Dakota against Ireland and wife to recover the land as a part of the trust estate, which he did. Afterwards it commenced an action in such courts in its own name, and for its exclusive benefit, against the same parties, to subject the land to the payment of the greater part of its debt so proved under the assignment. All the parties to this action are citizens of this state, and it does not appear that there are any nonresident creditors of the insolvent. *Held,* distinguishing Jenks v. Ludden, 34 Minn. 482, that the trial court did not err in directing the wife of the insolvent to convey the land to the plaintiff, as such assignee, and enjoining the bank from further prosecuting its suit.

Appeal by defendant bank from an order of the district court for Hennepin county, Russell, J., denying a motion for a new trial. Affirmed.

*Rea, Hubachek & Healy,* for appellant.

In case of an involuntary assignment, the assignee has no extra-territorial jurisdiction over real property as against an attaching

[1] Reported in 67 N. W. 73.

creditor of the assignor, whether the attachment is before or after the assignment. Burrill, Assgmts. §§ 2, 172, 277 (2, 303, 304). See Story, Confl. Laws (8th Ed.) § 404. An assignment under our insolvent law, made after attachment or garnishment, is an involuntary assignment, the assignee being in effect an officer of the court, and the assigned property being in custodia legis, and administered by the court or under its direction. Wendell v. Lebon, 30 Minn. 234, 15 N. W. 109; In re Mann, 32 Minn. 60, 19 N. W. 347; Simon v. Mann, 33 Minn. 412, 23 N. W. 856; Lord v. Meachem, 32 Minn. 66, 19 N. W. 346; Bennett v. Denny, 33 Minn. 530, 24 N. W. 193; Jenks v. Ludden, 34 Minn. 482, 27 N. W. 188; Smith v. St. Paul Ger. F. I. Co., 56 Minn. 202, 57 N. W. 475; Smith v. Higinbotham, 53 Kan. 250, 36 Pac. 336; State v. Rose, 4 N. Dak. 319, 58 N. W. 514; McClure v. Campbell, 71 Wis. 350, 37 N. W. 343. Assignments by operation of law in bankruptcy or insolvency proceedings, under which debts may be compulsorily discharged without full payment, can have no legal operation out of the state in which such proceedings were had. Burrill, Assgmts. § 276 (303); Barth v. Backus, 140 N. Y. 230, 35 N. E. 425. See, also, Carroll v. Farmers' & M. Bank, 1 Harr. (Mich.) 197; Mead v. Merritt, 2 Paige, 402; Burgiss v. Smith, 2 Barb. Ch. 276; Hutcheson v. Peshine, 16 N. J. Eq. 167; Holbrook v. Ford, 153 Ill. 633, 39 N. E. 1091. The assignee of this judgment is not a party. He is a citizen of North Dakota, and is not amenable to any process of the courts of this state. Jenks v. Ludden, supra. The assignee of a judgment is a necessary party to a suit for perpetual stay of proceedings. 2 Black, Judg. § 953; Mumford v. Sprague, 11 Paige, 438. See Estate of Columbus v. Monti, 6 Minn. 403 (568).

*J. B. Phelps,* for respondent.

So long as the court had jurisdiction over all parties claiming any interest in the lands at the time the action was brought, the court had power to determine the rights of the respective parties. Towne v. Campbell, 35 Minn. 231, 28 N. W. 254; Beach, Mod. Eq. Jur. §§ 649, 886, 887; Mitchell v. Bunch, 2 Paige, 606, 22 Am. Dec. 669, and note at end. Even where an assignment is void, after a creditor has come in and proved his claim under it, he is not allowed to take any steps which may impede or prevent an equal

distribution of the assets. Olson v. O'Brien, 46 Minn. 87, 48 N. W. 453; Aberle v. Schlichenmeir, 51 Minn. 1, 52 N. W. 974. See Harrison v. Winston, 2 Tenn. Ch. 544. It is a general and well-established rule that courts will interfere by injunction to prevent our own citizens evading our own insolvency laws by bringing actions in a foreign jurisdiction. Beach, Mod. Eq. Jur. § 649; Cole v. Cunningham, 133 U. S. 107, 10 Sup. Ct. 269, and cases therein cited; Dehon v. Foster, 4 Allen, 545. When the necessary parties are before the court, whether the res be real or personal property, the court has power to compel the parties to do all things necessary to establish the equities between the parties. Mr. Justice Swayne in Phelps v. McDonald, 99 U. S. 298, cited in Cole v. Cunningham, supra; Vermont & Can. R. Co. v. Vermont Cent. R. Co., 46 Vt. 792; Carron Iron Co. v. Maclaren, 5 H. L. Cas. 416; Snook v. Snetzer, 25 Ohio St. 516; Zimmerman v. Franke, 34 Kan. 650, 9 Pac. 747; Keyser v. Rice, 47 Md. 203; Dinsmore v. Neresheimer, 32 Hun, 204; Hendee v. Connecticut & P. R. Co., 26 Fed. 677. The assignment was voluntary. May v. Walker, 35 Minn. 194, 28 N. W. 252; Covey v. Cutler, 55 Minn. 18, 56 N. W. 255; Whitman v. Mast, B. & B. Co., 11 Wash. 318, 39 Pac. 649. An assignment made in one state, by a citizen of that state, if executed in form as required to convey lands in another state, is sustained in that other state, so long as citizens of that other state are not affected. May v. First Nat. Bank, 122 Ill. 551, 13 N. E. 806; Bentley v. Whittemore, 19 N. J. Eq. 462; Green v. Gross, 12 Neb. 117, 10 N. W. 459; Thurston v. Rosenfield, 42 Mo. 474; Chafee v. Fourth Nat. Bank, 71 Me. 514; Thompson v. Ellenz, 58 Minn. 301, 59 N. W. 1023; Burrill, Assgmts. § 283; In Matter of Waite, 99 N. Y. 433, 2 N. E. 440.

START, C. J. The material facts in this case, as disclosed by the record and the findings of fact of the trial court, are substantially as follows: The defendant the Irish American Bank is a corporation of this state, and the city of Minneapolis is its only place of business, and all of the parties hereto are, and have been during all the times hereinafter stated, citizens and residents of this state, and have appeared in this action. The defendant Amos P. Ireland and Arthur H. Ives for eight months prior to February

27, 1895, were partners in business at Minneapolis under the firm name of Ives, Ireland & Co. On December 12, 1894, Amos P. Ireland and the firm, and each member thereof, were insolvent, and on that day Ireland caused to be conveyed to his wife, the defendant Eliza S. Ireland, a section of land in the county of Steele, in the state of North Dakota, then and for a long time previously owned by him, and of the then value of $10,000. The pretended consideration for such conveyance was the sum of $3,318, but the deed was in fact made for the purpose of defrauding the creditors of Ireland.

Afterwards, and on February 27, 1895, an action, in which garnishee proceedings had been instituted, was pending against the firm of Ives, Ireland & Co., and on that day they made an assignment, under the insolvency laws of the state, to the plaintiff, of all of their firm and individual property wherever situated. The plaintiff accepted the trust, and promptly, at the request of the attorney of the defendant the Irish American Bank, commenced an action, filing a lis pendens, against Ireland and his wife in Steele county, North Dakota, to set aside the fraudulent conveyance, and have the land applied to the payment of all debts which might be proven against the estate of the assignors. This action is still pending. When the assignment was made, the assignors were indebted to defendant the Irish American Bank in the sum of $4,000, one-half of which was incurred prior to the making of the deed in question. Immediately after the making of the assignment, the bank proved its full claim as a creditor in the insolvency proceedings, and has in all respects, from that time to this, assumed and claimed all the rights of a creditor in such proceedings, and has filed petitions and made motions therein. Among others, it procured an examination of the insolvents in such proceedings by an order of the court, whereby the facts were disclosed in relation to the making of the fraudulent deed by Ireland to his wife. It has never withdrawn any part of its claim as proved against the estate of the assignors, and admits, in its answer to this action, that it always has claimed, and still claims, the rights of a creditor under the assignment proceedings.

After the plaintiff had commenced his action in North Dakota to set aside the deed, the defendant bank also commenced an ac-

tion against Ireland and wife in Steele county, North Dakota, in the nature of a creditors' bill, whereby it seeks to ignore the assignment, and subject the land in question to the payment in full of the greater part of its claim, to the exclusion of the other creditors of the insolvent. The basis of its action is a judgment recovered against Ireland in the district court of Hennepin county for $3,500, being a part of the same debt which it had previously proved, and is still asserting in the insolvency proceedings. Thereupon the plaintiff, as assignee, brought this action to compel Mrs. Ireland to convey the land to him, to be disposed of in the insolvency proceedings as a part of the trust estate, and to enjoin the further prosecution by the bank of its action in North Dakota.

In its answer to this action the bank alleges that on July 20, 1895, which was subsequent to the commencement of this action against it, it assigned its judgment against Ireland to W. C. McFadden. The trial court found that McFadden is a resident of North Dakota, and, further, that the evidence does not disclose that any consideration was paid by him for the judgment, and that the action in North Dakota is still being prosecuted in the name of the bank. There is no claim or suggestion in the record that there are any creditors of the assignors in North Dakota, except McFadden, or anywhere else outside of the state of Minnesota, or that there are any creditors who have not proved their claims in the insolvency proceedings, and become parties thereto. The record is simply silent as to these matters.

The trial court, as conclusions of law, found that the deed from Ireland to his wife was fraudulent and void as to creditors of Ireland and as to the plaintiff as assignee, and held that Mrs. Ireland should convey the land in question, to be disposed of in the insolvency proceedings, for the benefit of such creditors, and, further, that the defendant bank be enjoined from further prosecuting its action in North Dakota. From an order denying its motion for a new trial the bank appealed. Neither of the Irelands have appealed. They submit to the decision of the court, and the presumption is that they will obey its decree, and will convey the land to the plaintiff as directed, whereby the legal title to the land.

will be vested in the plaintiff as assignee, for the purpose of the trust created by the assignment to him.

The appellant's assignments of error present the general question, is the conclusion of law of the trial court, to the effect that the appellant be enjoined from further prosecuting its action in Steele county, North Dakota, correct? We answer the question in the affirmative.

1. The power of the court thus to enjoin the appellant is undoubted. All the parties to this action are citizens of this state, and subject to the jurisdiction of the court. The facts that the land is in another state, and the action which the appellant is forbidden to further prosecute is there pending, do not affect the question of the power of the court in the premises. The court, in such a case, simply commands its own citizens, not the courts of another state. A court of equity of this state has the power and will restrain its own citizens, of whom it has jurisdiction, from prosecuting suits in the courts of other states and foreign jurisdictions, whenever the facts of the case make such restraint necessary to enable the court to do justice, and prevent one citizen from obtaining an inequitable advantage over other citizens. "The court acts in personam, and will not suffer any one within its reach to do what is contrary to its notions of equity, merely because the act to be done may be, in point of locality, beyond its jurisdiction." Phelps v. McDonald, 99 U. S. 298; Cole v. Cunningham, 133 U. S. 107, 10 Sup. Ct. 269; Cunningham v. Butler, 142 Mass. 47, 6 N. E. 782, and 56 Am. Rep. 663, and note. No general rule can be laid down as to when the court ought to exercise this power, and enjoin a party from prosecuting a suit in a foreign jurisdiction. Each case must be ruled by its own facts. If they show that it is necessary and equitable to exercise the power in the orderly administration of justice, the court should enjoin the party, otherwise not.

2. The practical question, then, in this case is, do the facts of this case justify the action of the trial court in exercising this power? The appellant claims, in substance, that it would be inequitable to enjoin it from prosecuting its action to subject the land in question to the payment of its demand against the in-

solvent, because it would result in depriving it of its right thus to secure payment of its claim, without any corresponding benefit to the plaintiff. If this reason is supported by the facts and law of this case, it affords a conclusive negative answer to the question, for in such a case it would be inequitable to exercise the power. The argument of the appellant in support of its conclusion is, briefly indicated, that the assignment to the plaintiff was an involuntary one; hence no title to any property of the insolvents situated out of the state ever passed to the plaintiff as assignee; that, in any event, the assignment has no extraterritorial force, and that the title of the assignee to the land in question will not be recognized by the courts of North Dakota as against any creditor of the insolvent, whether resident or nonresident. This argument, in view of the special facts of this case, is largely an abstraction, and rests in a measure upon a misconception of the law.

The assignment to the plaintiff is not an involuntary one, which, like an execution, has no extraterritorial force, but it is a voluntary assignment for the benefit of creditors. This proposition has been assumed to be correct in several cases in this court: May v. Walker, 35 Minn. 194, 28 N. W. 252; Covey v. Cutler, 55 Minn. 18, 56 N. W. 255. It is an admitted rule that general voluntary assignments for the benefit of creditors, valid by the laws of the state where made, pass the title of the assignor's personal property wherever situated, as against subsequent attaching creditors or lienors, unless their operation is limited or restrained by the operation of some local law or policy of the state where situated. Covey v. Cutler, supra.

But, as to the assignor's real estate located in a state other than the one of his domicile and where the assignment is made, the manifest weight of authority, at least as to the number of the cases, is to the effect that the assignment does not pass the title to the real estate as against subsequent attaching creditors. Such an assignment, when executed and acknowledged and recorded in conformity with the laws of the state where the real estate is situated, passes the title thereto as against the assignor and his heirs. Stahl v. Mitchell, 41 Minn. 325, 43 N. W. 385. Why it should not also pass such title as against subsequent attaching

creditors and lienors, precisely as in the case of an assignment of personal property, it is difficult on principle to say. The usual reason given for the distinction between the two cases is that each state has a fundamental policy as to the tenure of land within its limits, and the title and disposition thereof must, of necessity, be subject exclusively to its laws. This is true, but it does not seem to be a satisfactory reason for the distinction. The validity of every conveyance of real estate must depend upon the laws of the state where the land is situated; but, when a transfer of real estate is in the form of a voluntary assignment for the benefit of creditors, and is executed, acknowledged, and recorded in accordance with the laws of the state where the land is situated, and it contravenes neither the public policy nor the laws of such state, why should it not convey the title as against subsequent creditors precisely as an ordinary deed absolute in its terms would, or an assignment of movables? Bentley· v. Whittemore, 19 N. J. Eq. 462.

It is not, however, our purpose to decide the question here suggested, because, for the purposes of this case, we assume the rule to be that an assignment for the benefit of creditors does not, as against the creditors of the assignor, pass the title to his real estate situated in a state other than the one where the assignment is made. Therefore, except for the special facts of this case, we should hold that the trial court erred in enjoining the appellant from prosecuting its action, for, if the appellant was not a party to the insolvency proceedings, and equitably estopped from claiming adversely to the plaintiff as assignee, and if there was a fair probability that the only result of its being so enjoined would be that some nonresident creditor would secure the land, and not the plaintiff, then clearly it would be inequitable to so enjoin the appellant. But this case is the reverse of the one supposed, as shown by the special facts we have already stated, and which need not be here repeated. It is sufficient to say that the fair conclusion from such facts is that the appellant requested the plaintiff to take the necessary steps to secure the land in question for the benefit of all of the creditors of the insolvent, and that he did so; that it is a party to the insolvency proceedings, and has actively participated in the management of the same, and still

asserts its right to share in the assigned estate pro rata to the full amount of its claim; that the land in question will be conveyed, pursuant to the order of the court, to the plaintiff by the person who holds the legal title in trust for the insolvent's creditors; that, so far as aught appears, if the appellant is enjoined, all of the creditors will share equally in the land. These facts equitably estop the appellant from claiming the land adversely to the plaintiff, and thereby embarrass, if not defeat, him in his efforts to secure the land for the creditors. Chafee v. Fourth Nat. Bank, 71 Me. 514.

We base our decision upon this ground, and the special facts of this case. In view of such facts, it would have been inequitable, and a wrong to the other creditors of the insolvent, if the trial court had refused to enjoin the appellant. This is so, even if it be conceded that it is not entirely certain that, if the appellant is enjoined, the plaintiff will secure the land; for, under the circumstances of this case, the plaintiff, and not the appellant, is entitled to the benefit of any fair doubt in the premises.

The case of Jenks v. Ludden, 34 Minn. 482, 27 N. W. 188, relied upon by the appellant, is not in conflict with the conclusion we have reached. As already suggested, whether a court will exercise its power to restrain a citizen of this state from prosecuting an action in another state depends upon the facts of each particular case. Now the case at bar and that of Jenks v. Ludden in their facts are the reverse of each other. In the latter case the defendant, a citizen of this state, secured a first lien by attachment of the land of the assignors in the state of Wisconsin, and another creditor, a citizen of the latter state, secured in like manner a second lien on the same land. After these liens were secured, the assignors, citizens of this state, made an assignment for the benefit of their creditors under our insolvency laws. They were indebted to nonresident creditors, including $10,000 to citizens of Wisconsin, in the sum of $40,000. The defendant never in any manner became a party to the insolvency proceedings, or in any manner asserted any claim against the estate of the insolvents in the hands of their assignee. Upon these facts the assignee commenced an action in the courts of this state to restrain the defendant from prosecuting his attachment suit in Wisconsin, and

this court held that he ought not to be so restrained, for the conclusive reason that it was apparent that the only result of such action would be to deprive the defendant of his lien, lawfully obtained before the assignment was made, without any benefit to the assignee, because our insolvency laws would not operate to dissolve the attachment of the Wisconsin creditor, secured before the assignment was made, and, if the defendant could not proceed with his attachment, the land would fall to the Wisconsin creditor. "The effect would be merely to injure one of our own citizens, without accomplishing any benefit to other domestic creditors."

3. It is immaterial whether McFadden paid any consideration for the judgment. There is no claim that he was a purchaser in good faith without notice, for it is an admitted fact that he purchased pendente lite. He is therefore bound by the result of this action.

Order affirmed.

CANTY, J. (dissenting). I cannot concur in the foregoing opinion. It is true that there are many cases where, as between residents of, or persons in, this state, a court of equity can compel a conveyance of real estate situated in some other state, and can compel or enjoin the performance of some other act as to the same. But this jurisdiction should not be exercised where it is as likely to prove abortive as it is in the class of cases to which the present case belongs. In nine cases out of ten, it will result in a waste of time and energy, and bring the authority of the courts of this state into contempt, to try to seize, in this indirect manner, real estate situated in other states, to be applied, through assignment proceedings here, to the payment of the debts of the insolvent. There is such an almost universal and total want of comity between the states in this respect that the courts of the state where the land is situated will aid every creditor who can dodge the jurisdiction of our courts over his person to appropriate the land to the payment of his individual debt. When the action in this state is brought, and even when it is tried, it is impossible to tell whether the court has corralled all the creditors or not, and it will usually turn out that it has not, but that some have escaped, who will seize the land in the state where it is situated,

and set the court of this state at defiance. No case has been cited sustaining any such an action as this. The case of Chafee v. Fourth Nat. Bank, 71 Me. 514, was very different. There the action was brought in the court of the state where the land is situated, and was not, as is this case, an attempt to cut that court out of its jurisdiction. But even that case recognizes a comity which, so far as I can ascertain, no other court has recognized. That such comity should universally exist, will not justify the holding of the majority in this case.